Filed 1/22/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DEPUTY SHERIFFS' ASSOCIATION OF SAN DIEGO COUNTY, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF SAN DIEGO et al., <br><br> Defendants and Respondents. | D065364 <br><br><br> (Super. Ct. No. 37-2013-00029085-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge. Affirmed in part, reversed in part and remanded.

Silver, Hadden, Silver, Wexler & Levine, Stephen H. Silver and Brian P. Ross for Plaintiff and Appellant.

Thomas E. Montgomery, County Counsel and Timothy M. Barry, Senior Deputy County Counsel, for Defendant and Respondent County of San Diego.

Kamala D. Harris, Attorney General, Douglas J. Woods, Assistant Attorney General, Mark R. Beckington and Anthony P. O'Brien, Deputy Attorneys General, for Defendant and Respondent State of California.

Crowell & Moring and Steven P. Rice, for Defendant and Respondent San Diego County Employees' Retirement Association.

INTRODUCTION

In this appeal, we consider whether the state constitution's prohibition against the impairment of contracts precludes the application of the defined benefit formulas and employee contribution provisions of the California Public Employees' Pension Reform Act of 2013 (Act) (Gov. Code, § 7522 et seq.)[1] to County of San Diego (county) safety employees who were hired after the Act's effective date, but who were covered by preexisting collective bargaining agreements containing conflicting terms. We conclude the application of the defined benefit formula provisions does not result in a constitutionally prohibited impairment of the agreements. We do not reach the constitutional question as to the application of the employee contribution provisions as we conclude their application resulted in a statutorily prohibited impairment of the agreements. We, therefore, affirm the judgment as to the application of the defined benefit formula provisions and remand the matter to the superior court for further proceedings as to the application of the employee contribution provisions.

---

[1] Further statutory references are also to the Government Code.

DISCUSSION

I

*Application of Act's Defined Benefit Formula Provisions*

A

*Background*

The county and the Deputy Sheriffs' Association of San Diego County (association) were parties to collective bargaining agreements covering two groups of employees, the deputy sheriffs' unit and the safety management unit, through June 26, 2014 (agreements). The agreements required the county to provide covered employees hired "after a date determined by the Board of Supervisors" with defined pension benefits based on a 3 percent at age 55 (3% @ 55) formula.[2]

The Act became effective January 1, 2013 (§ 7522.02, subd. (a)(1)), and applies to the county and the county's retirement system, which is administered by the San Diego County Employees' Retirement Association (SDCERA).[3] (*Ibid.*) Among the Act's provisions, the Act limits the defined benefit formulas available to new members of the

---

[2]    The record does not indicate exactly when the county implemented the formula. However, the effective date of the agreement extension adopting the formula was June 19, 2009.

[3]    Although SDCERA is a party to this action, it has not taken any position on the disputed issues and, instead, has indicated it will abide by the court's decision.

county's retirement plan.[4] (§§ 7522.15, 7522.25, subd. (e).) For new safety members, the available formulas are 2 percent at age 57, 2.5 percent at age 57, and 2.7 percent at age 57.[5] (§§ 7522.15, 7522.25, subds. (b)-(d).) The Act generally requires the employer to offer the formula closest to the formula the employer offered to comparable employees on December 31, 2012 (§ 7522.25, subd. (e)), which in this case would be the 2.7 percent at age 57 (2.7% @ 57) formula.

B

*Analysis*

The association contends the application of the 2.7% @ 57 formula to new members who were hired and became covered by the agreements on or after January 1, 2013, but before the agreements' expiration date of June 26, 2014, violates the state constitution's contract clause. We review this contention de novo. (*California Assn. of*

---

[4]    " 'Defined benefit formula' means a formula used by the retirement system to determine a retirement benefit based on age, years of service, and pensionable compensation . . . ." (§ 7522.04, subd. (a).)
       " 'New member' means any of the following: [¶] (1) An individual who becomes a member of any public retirement system for the first time on or after January 1, 2013, and who was not a member of any other public retirement system prior to that date. [¶] (2) An individual who becomes a member of a public retirement system for the first time on or after January 1, 2013, and who was a member of another public retirement system prior to that date, but who was not subject to reciprocity under subdivision (c) of Section 7522.02. [¶] (3) An individual who was an active member in a retirement system and who, after a break in service of more than six months, returned to active membership in that system with a new employer." (§ 7522.04, subd. (f).)

[5]    As relevant here, "safety member" means "[a]ny person employed by a county . . . whose principal duties consist of active law enforcement . . . ." (§ 31469.3, subd. (b).)

*Professional Scientists v. Schwarzenegger* (2006) 137 Cal.App.4th 371, 382 (*Professional Scientists*).)

Article 1, section 9, of the California Constitution prohibits the passage of a "law impairing the obligation of contracts." The contract clause limits the state's power "to modify its own contracts with other parties, as well as contracts between other parties." (*Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1130.) Analysis of a contract clause claim requires inquiry into: " '(1) the nature and extent of any contractual obligation . . . and (2) the scope of the Legislature's power to modify any such obligation.' " (*Id.*, at p. 1131; accord, *Teachers' Retirement Bd. v. Genest* (2007) 154 Cal.App.4th 1012, 1027.) The party asserting a contract clause claim has the burden of "mak[ing] out a clear case, free from all reasonable ambiguity," a constitutional violation occurred. (*Floyd v. Blanding* (1879) 54 Cal. 41, 43.)

Generally, the terms and conditions of public employment are not protected by the contract clause because they are controlled by statute or ordinance, not by contract. (*Olson v. Cory* (1980) 27 Cal.3d 532, 537-538; *Professional Scientists*, *supra*, 137 Cal.App.4th at p. 375.) Nonetheless, "once a public employee has accepted employment and performed work for a public employer, the employee obtains certain rights arising from the legislative provisions that establish the terms of the employment relationship—rights that are protected by the contract clause of the state Constitution from elimination or repudiation by the state." (*White v. Davis* (2003) 30 Cal.4th 528, 566.) Among these protected rights are vested pension rights. (*Betts v. Board of Administration of Public Employees' Retirement System* (1978) 21 Cal.3d 859, 863 [a pension right, once it has

5

vested, cannot be destroyed without impairing a contractual obligation]; *Kern v. City of Long Beach* (1947) 29 Cal.2d 848, 853 [same].)

The association properly recognizes the new safety members covered by the agreements did not have a vested right to the application of the negotiated 3% @ 55 formula because they had not performed any services for the county before the Act's effective date. Generally, " '[t]he contractual basis of a pension right is the exchange of an employee's services for the pension right offered by the statute' and thus ' "[f]uture employees do not have a vested right in any particular pension plan." ' " (*Professional Scientists*, *supra*, 137 Cal.App.4th at p. 383, quoting *Claypool v. Wilson* (1992) 4 Cal.App.4th 646, 662; accord, *City of San Diego v. Haas* (2012) 207 Cal.App.4th 472, 490.)

Instead, the association contends the new safety members covered by the agreements had a constitutionally protected right to the application of the 3% @ 55 formula because the agreements predated the Act, they were binding, and they required the use of the 3% @ 55 formula until they expired. (§ 3505.1; *Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 336 [a collective bargaining agreement between a public employer and a public employee labor organization is binding for the agreement's duration]; *Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1182-1183 [same]; *San Bernardino Public Employees Assn. v. City of Fontana* (1998) 67 Cal.App.4th 1215, 1220 [same].) However, the association's position conflicts with authorities indicating there is no contract clause protection for unvested contractual pension rights. (See *Welfare Rights v.*

6

*Frank* (1994) 25 Cal.App.4th 415, 423-424 [state and federal contract clauses protect only vested contractual rights]; *Vielehr v. State of California* (1980) 104 Cal.App.3d 392, 396 [unless and until contractual pension rights become vested, the Legislature may modify them without violating the contract clause]; accord, *Miller v. State of California* (1977) 18 Cal.3d 808, 815-817; *City of San Diego v. Haas*, *supra*, 207 Cal.App.4th at p. 497; *County of Orange v. Association of Orange County Deputy Sheriffs* (2011) 192 Cal.App.4th 21, 41; *San Diego Police Officers' Assn. v. San Diego City Employees' Retirement System* (2009) 568 F.3d 725, 737; see also, *In re Marriage of Guthrie* (1987) 191 Cal.App.3d 654, 663 [test for whether a statute unconstitutionally impairs a contractual right is the same as the test for whether a statute unconstitutionally impairs a vested property right]; *In re Marriage of Doud* (1986) 181 Cal.App.3d 510, 520 [same]; *In re Marriage of Potter* (1986) 179 Cal.App.3d 73, 83 [same]; *Donlan v. Weaver* (1981) 118 Cal.App.3d 675, 684 [same].)

The association's reliance on *Sonoma County Org. of Public Employees v. County of Sonoma* (1979) 23 Cal.3d 296 (*Sonoma County*) to support its position is misplaced. The *Sonoma County* case involved the impairment of negotiated wage increases for *existing* employees. (*Id*., at pp. 304-305.) The case did not address the impairment of negotiated pension benefits for *prospective* employees. " 'A decision is authority only for the point actually passed on by the court and directly involved in the case.' " (*Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1107.)

We are also not persuaded by the language in the *Professional Scientists* case stating: "When a collective bargaining agreement purports to secure pension rights for

7

future employees, it may well be that the federal and state contract clauses protect the rights of future employees as much as the rights of existing employees." (*Professional Scientists*, *supra*, 137 Cal.App.4th at p. 383.)   After making the statement, the *Professional Scientists* court expressly declined to analyze it further and resolved the case on another ground.  (*Ibid.*)  "Incidental statements of conclusions not necessary to the decision are not to be regarded as authority." (*Simmons v. Superior Court* (1959) 52 Cal.2d 373, 378; accord, *In re John B.* (1989) 215 Cal.App.3d 477, 481.)

To the extent *Professional Scientists* provides any applicable guidance, the case is unhelpful to the association.  The case affirms an employee's contractual pension expectations are determined by the pension benefits in effect when employment commences.  " 'By entering public service an employee obtains a vested contractual right to earn a pension on terms substantially equivalent to those then offered by the employer.' " (*Professional Scientists*, *supra*, 137 Cal.App.4th at p. 383, quoting *Carman v. Alvord* (1982) 31 Cal.3d 318, 325.)

More importantly, the case holds where, as here, a collective bargaining agreement incorporates statutorily available retirement plan options and the Legislature has not restricted itself from later changing the options, then subsequent changes applicable only to prospective employees do not violate the contract clause. (*Professional Scientists*, *supra*, 137 Cal.App.4th at pp. 383, 385-836.)  The holding is consistent with the long-standing recognition " 'not only is the existing law read into contracts in order to fix their obligations, but the reservation of the essential attributes of continuing governmental power is also read into contracts as a postulate of the legal order.' " (*Allen v. Bd. of*

8

*Admin.* (1983) 34 Cal.3d 114, 120; *Teachers' Retirement Bd. v. Genest*, *supra*, 154 Cal.App.4th at p. 1026-1027.)  The holding is also consistent with the long-standing recognition the contract clause protects only reasonable contract expectations (*Allen v. Bd. of Admin, supra*, at p. 120), which in the case of a prospective public employee's pension rights, do not arise until employment commences.  (*City of San Diego v. Haas*, *supra*, 207 Cal.App.4th at p. 489 ["prospective employees have no right to any benefits prior to accepting employment, and the public agency is free to change those benefits prior to hiring"].)  Accordingly, we conclude the association has not established application of the 2.7% @ 57 formula to new safety members covered by the agreements violates the state constitution's contracts clause.

II

*Application of Act's Employee Contribution Requirements*

A

*Background*

For covered employees hired after January 1 and before July 1, 2013, the agreements required the county to pay 6 percent of the employees' required retirement contribution, which averaged 11.19 percent of pensionable income.  For covered employees hired on or after July 1, 2013, the agreements required the county to pay 3 percent of the employees' required retirement contribution during the employees first five years of continuous service and 6 percent thereafter.  Conversely, the Act generally requires new members to pay at least 50 percent of the defined benefit plan's normal cost, which is 12.58 percent of pensionable income for safety members covered by the 2.7% @

9

57 formula, and employers are not permitted to pay any of this amount.[6] (§ 7522.30, subds. (a), (c).)

B

*Analysis*

The association contends application of section 7522.30's employee contribution requirements to new members covered by the agreements resulted in a constitutionally prohibited impairment of the county's obligations under the agreements. We need not reach the constitutional question as we conclude application of the employee contribution requirements resulted in a statutorily prohibited impairment of the county's obligations under the agreements.[7] (*People v. Brown* (2003) 31 Cal.4th 518, 534 [appellate court will not reach a constitutional question unless absolutely necessary to dispose of the matter before it]; *Teachers' Retirement Bd. v. Genest*, *supra*, 154 Cal.App.4th at p. 1043 [same].)

As relevant here, subdivision (f) of section 7522.30 provides: "If the terms of a contract . . . between a public employer and its public employees, that is in effect on January 1, 2013, would be impaired by any provision of this section, that provision shall

---

[6]   " 'Normal cost' means the portion of the present value of projected benefits under the defined benefit that is attributable to the current year of service, as determined by the public retirement system's actuary according to the most recently completed valuation." (§ 7522.04, subd. (g).)

[7]   Although the state is a named party to this action, the state limited its participation to defending the constitutionality of the Act. The state has not expressed any view on whether the county properly interpreted and applied the Act's employee contribution requirements.

not apply to the public employer and public employees subject to that contract until the expiration of that contract."  In this case, the agreements were in effect on January 1, 2013, and the application of section 7522.30's employee contribution provisions conflicted with the agreements' terms governing employee contributions.  Consequently, under the plain language of the statute, the conflicting provisions of section 7522.30 did not apply to new members governed by the agreements until the agreements expired on June 26, 2014.  (§ 7522.30, subd. (f).)

## DISPOSITION

The judgment is reversed as to the superior court's determination the conflicting employee contribution provisions of section 7522.30 applied before the agreements expired.  The matter is remanded to the superior court for further proceedings consistent with this opinion.  The judgment is affirmed in all other respects.[8]  The state is awarded its appeal costs.  The remaining parties are to bear their own appeal costs.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

McDONALD, J.

---

[8]     By separate order, we directed the superior court to correct a clerical error in the case number identified on the judgment.